Good morning, your honors. May it please the court, I am Joanne Causton Holloway. I represent Aetna Life Insurance Company and FedEx Express Corporation Short-Term Disability Plan, in this case. I'd like to reserve two minutes for rebuttal, if I may. This case serves as a model of a well-known principle, and that is there are no exceptions to the rule, that is, this case is not about there being any confusion over when the appellee, Nerses Meguerditchian, was required to file his short-term disability claim. Rather, this case is about the appellee creating an artificial ambiguity where none exists in order to be an exception to the rule. While we sympathize with the appellee, with the circumstances that he was going through at the time that he was supposed to file his claim, ERISA does not allow us to create an exception for him because we must enforce the plan as written. Okay, help me with this. The judge ruled that they're not going to accept this business about actual knowledge because it's not part of the record. Why should we be considering things that were not part of the administrative record? Well, Your Honor, because there's case law within the circuit that says if there is a procedural irregularity that's been alleged, then you can allow evidence outside the record to fully develop the record. And in this case, there was no allegation at all of confusion until... But isn't this a substantive ERISA violation claim, not a procedural one? Well, in the complaint, there's allegations of procedural violations. They're alleging that our claims procedures failed to comply with ERISA. And so, they're alleging... Isn't it a substantive violation if the summary plan description is not clear? Isn't that a substantive violation? Well, Your Honor, the... ERISA? The statute that is cited in the complaint is, and I'm trying to find it, but the statute that's cited in the complaint is for a procedural irregularity. And that is what they are claiming was violated. Okay. My question is, if the summary plan description is not clear and it's ambiguous, that to interpret... Well, isn't that a substantive violation? Well, I think that the finding that it's not clear could be a substantive violation, but the allegation in the complaint was with the notice procedures, and that's procedural irregularity. But ultimately, what we're talking about here, what happened was that there was a substantive violation because the summary plan description was not clear, and the way it was interpreted by Mr. Megadurchian was consistent with one of multiple interpretations of the summary plan description. Why is that wrong? Because, Your Honor, the case law talks about it that you can allow the evidence if there's just an allegation. So, whether the court ultimately found a substantive error is different from the allegations that was in the complaint. And at that time, the allegations made was a procedural irregularity, and so the court should have allowed us to produce evidence to specifically rebut the misrepresentations made to the court. The misrepresentations he made to the court specifically undermine his claim. He's claiming that he was confused about the deadline of when he had to file his claim, but there is sufficient evidence that shows that we told him on more than one occasion when he was supposed to file his claim. Well, let me ask you this. Why, you know, all this that you're saying reflects on actual notice. It all occurred before he had his administrative hearing. Why wasn't a record made of all this for the administrative record? Because, simply, Your Honor, the administrative record consists of the correspondence of the denial from Aetna and the plan and the summary plan description. In the complaint, which the carrier has control over, what's going to constitute the administrative record, right? Yes. And the carrier had notice, actual or constructive, that there had been this communication indicating actual notice, right? Yes, Your Honor. And so my point is, why didn't they make that part of the administrative record over which they have some control? Well, and I'm saying the reason why is because as a practice, typically, Aetna and its administrative records includes the denial letters, the summary plan description, and the plan itself. Maybe they ought to change their practice. Well, after this and after there was this allegation of confusion at the last minute, that's probably a good idea. Right. But until this allegation was raised at the trial court level during the trial brief, we had no reason to include this. And so the appellate claims that he had no notice, as I stated, but we sent a letter to him on January 12th stating, you are solely responsible for reporting your STD claim. You should immediately contact Aetna. A failure to do so within 60 days will result in denial of your claim. It also stated you should also contact Aetna. Well, he's making a claim to recover benefits under the plan, right? So one of his arguments is not only is the plan language ambiguous as to when the clock starts, but also the fact that he had actual notice, how does that change the analysis as to whether the plan language has ambiguity? Well, I think it changed the analysis, Your Honor, because the question is based upon a participant's alleged understanding, not based upon the court's alleged understanding. So until a participant comes forward and says, I am confused, then there is no basis to say that the plan language is confusing. It's based upon his own confusion. So his actual knowledge regarding whether or not he is confused becomes relevant in that regard. So basically what you're saying is that he showed that he had no reliance upon this ambiguity in the summary plan description, therefore he loses? Yes, Your Honor. Do you have any case law that indicates that there is a requirement that a claimant rely upon the ambiguity in the summary plan description? Can you repeat that? I'm sorry. Any case law? Do you have any case law, in circuit, out of circuit, district court, anything, that indicates that a claimant must rely upon the ambiguity in the summary plan description  I don't have any case law specifically addressing that point exactly, but there is a case from this circuit, the Hewitt-Packer case, it's a 2006 case, where this court stated that the actual knowledge defeats an untimely claim where the claimant is basing his claim for a lack of notice. And so I think that's relevant. Right, but it almost, you're almost turning a substantive violation into a procedural one so that you can backdoor in the evidence of actual notice. Isn't that right? Well, Your Honor, again, I think there's a difference between what the court found to be a procedural, a substantive violation versus what the allegations were. And so at the time that we were seeking to get this evidence in, they were alleging procedural irregularities. And so when there is a procedural irregularity, this court has allowed evidence outside of that specifically evidence related to actual knowledge. And also, the Burt case cited in our brief specifically relates to being able to supplement the record when there's been some type of change or irregularity. In those cases, it dealt with the administrator who said there was one reason for the denial and then changed the reason. And the court said that they should be allowed to supplement the evidence to rebut that evidence. And so we're saying we should be allowed to rebut these misrepresentations that were made to the court. Let me ask you this. Do you think that the district court's decision is premised on a procedural violation or a substantive violation? I think the district court's decision focus, his ruling, was focused on a substantive violation. All right. So once we get to that point, shouldn't we focus on that rather than the allegations of the complaint that just start this ball rolling? No, Your Honor, because at the point where we're asking to submit this evidence, it was before his ruling came into play. And so it involved allegations of procedural irregularities. Was there a briefing by counsel on the issues immediately before it was submitted to the judge who made this determination of substantive violation? There was briefing on our side. And I take it that's not part of the excerpts of record. No, Your Honor, but it is part of the lower court record. But it's in the lower court record. Yes, Your Honor. And in that, is there any focus on substantive violations by the claimant? There is. I believe. I'm not. My point is it was clearly alerted that the claimant was going for substantive violations. So it was no real big surprise when that was the basis of the district court's decision. I'm not sure, Your Honor. I'm not sure that that exists. So I don't want to speak out of turn. No, that's fine. Thanks. But in addition to Mr. McCordishian having actual knowledge, the summary plan description and the plan itself is clear as to when you're supposed to file your claim. What Mr. McCordishian is trying to do is mix and match select phrases and partial definitions to try to create this ambiguity. But the plan specifically states that it requires notice to be You're talking about the plan? Make it clear what you're talking about. You're talking about the plan or you're talking about the SPD? Currently, I'm talking about the plan, Your Honor. Okay. Okay. All right. And you're talking about Section 3.5? Yes, Your Honor. The plan requires notice to be Hold on. Hold on one second here. I'm talking about the notice of claim section under the plan. Yeah. Okay. The plan itself states that it requires notice to be timely submitted within 60 days of the commencement of the covered employee's disability. Then it goes on to define disability as an occupational disability. Then it further defines occupational Wait, wait, wait. So hold on here. This is a very So we're We start in Part 10. I'm sorry. 3.5, Your Honor. 3.5. I thought I had 3.5. I guess I have the summary plan. Oh, here it is. I'm sorry. I got it. Okay. The plan requires notice within 60 days of the date of the commencement of the covered employee's disability. It then goes on to define disability as an occupational disability. It further defines occupational disability as the inability of a covered employee because of impairment to perform the duties of his regular occupation. And then the summary plan description language echoes the language of the plan itself. You're referring to the language from doing his job. Yes. It says you are considered disabled if a physical or mental illness or injury prevents you from doing your job. Now, a physical or mental illness does not prevent you from doing your TRW job because otherwise you wouldn't be able to work in the TRW program. It prevents you from doing your regular job. And the appellee argues that our summary plan description violates ERISA because it doesn't have a specific language stating specific in determining whether or not the summary plan description is ambiguous. Do we go back to the plan to see whether that helps you determine whether the description is ambiguous? No, Your Honor. All right. So without going to the plan that uses the language performing the duties of regular occupation, instead we should focus only on the language of doing one's job, right? Well, Your Honor, what I'm saying… Isn't that right? Because that's what it says in the summary plan description. Yes, Your Honor. But the exception to that would be if it refers you specifically to a section in the plan. And you're saying that in the summary plan description it says see plan in the section that says performing the duties of one's regular occupation? In the summary plan description there is one part that says when it mentions disability it says as referencing 3.5. But it doesn't say it in close proximity to the verbiage doing one's job? I'm not certain about that, Your Honor. Does the plan have any reference to TRW such that the plan participant could figure out how the TRW plan fits into when the clock starts? I'm sorry. Can you repeat that one more time? Right. The question for me is whether the clock starts when the period of his temporary return to work began or ended. So does the plan shed any light on how utilizing the temporary return to work impacts the clock? Yes, Your Honor. And where does the plan address the TRW period? The summary plan description addresses the TRW program. I'm talking about the plan language itself. Does it address the TRW period? I think there's a reference. There may be a reference in the plan to the TRW program, but it's specifically addressed in the summary plan description, which is the main information that participants rely on. It's the main source of communication for participants. And it specifically states all throughout addressing the TRW program that you will be working in the TRW program while you're disabled. As a matter of fact, as a conditions precedent to working in a TRW program, you essentially have to be disabled because you get to work in it after you aren't able to perform the duties of your regular job. If we don't agree with you that it's the SPD that really controls, but instead it's the plan language, then does your argument still hold? My argument does still hold, Your Honor, because the TRW program is not part of the short-term disability plan. That's a separate program and a separate concept. No, I understand that, but it goes to ambiguity, right, how that impacts the clock. So it does go to whether the plan language is ambiguous or not, does it not? Well, first, Your Honor, let me say I wasn't sure exactly what the TRW says in the plan itself. We specifically address it in detail in the SPD. But if it doesn't address it specifically, I still don't think there's no ambiguity because the plan specifically states that you need to file your claim within 60 days of your disability, and then it specifically defines disability as when you are unable to perform the duties of your regular job. By definition, a TRW program, you're not working your regular job. Okay. Thank you, counsel. Thank you. Good morning, Your Honors. My name is Peter Sessions. I'm counsel for Mr. Megwidichian in this case. And I think this is a straightforward case. The court's rationale below is fairly straightforward. ERISA clearly requires summary plan descriptions to be written, this is a quote, in a manner calculated to be understood by the average plan participant and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of the rights and obligations under the plan. And the district court found that this SPD was confusing and didn't comply with this rule. And as a result, the proper remedy is to ensure that the claim be considered on the merits. And I'd like to remind the court that's all we're asking the district court below and this court to do. We're not asking right now for FedEx to pay the claim. We're just asking FedEx to consider the claim on the merits, which as a 20-plus year employee of FedEx who was trying to do everything correctly, we think he should be entitled to do. If you look at the facts of this case, here's a man who became injured. He informed his employer. He promptly returned to work in the return to work program. He did his best. He completed the program. How come he didn't? One thing I didn't understand, when I read the temporary program, it seemed to suggest that you only get into that program if you apply for disability benefits. Well, the return to work program is complicated. As counsel indicated, I don't think it's fully set forth in the plan itself. And the summary plan description, I believe, refers employees to another document to understand exactly what happens in the return to work program. The summary plan description is a summary plan description for the disability plans. Would they have put him in the temporary work program had he not been disabled? Well, it depends on, essentially, yes. But I'm hesitant because when we start using the word disability, then we start getting into the question of, well, when did that start? That he would not have been put in that program if he had not been injured and stopped doing his old job, yes, that's true. But if the question is, well, when does his clock start ticking? And this is why the return to work program really confuses things. The average reasonable person who stops working at their old job and then comes back to work in a different capacity wouldn't necessarily conclude that the clock has started ticking because the summary plan description, over and over, talks about how disability means your inability to work. So if you're in the return to work program, most people would reasonably conclude, well, I'm working, so therefore the clock hasn't started ticking on my time. And this work is like light duty versus what he was doing before. Right, he was doing a lighter duty job. And it's a 90-day maximum program, and my understanding of the program is— But you're still putting in the same number of hours. So as I understand it, correct me if I'm wrong, if you are doing, let's say, a job that requires a lot of heavy lifting and you're injured on the job and your employer finds out you can't perform the full range of your prior responsibilities, you're still going to work in the temporary return to work program, right? You are. You're still doing work for the company. And although there's one interesting quirk about the program, it's not full time. I believe it's a maximum 28 hours instead of a 40-hour week. And the quirk is that the integration of the disability and the return to work programs actually disincentivizes employees from applying for both because the way the plan works is there's offsets so that you can't make more than 70% of your salary while you're in the return to work program. And so if you are receiving disability benefits under the plan and also receiving salary under the return to work program, you're capped at 70%, which is where that 28 hours comes from because that's 70% of 40 hours. So the average reasonable employee who's in the return to work program and making 70% of what they were making, 28 hours a week, would also reasonably conclude, well, not only do I have more time to submit my claim, but there's no reason why I should do it now because there's no financial advantage to me. Well, except he has a 30% gap. So when he's in this temporary program, the light duty, he's making 70% of what he made before, right? That's right. And so he's short 30%. Now, isn't that what the disability pays at least during this period when he's still working? No, my understanding is that the way the offset provisions work is that he can't make more than the 70%. So he's ultimately just going to absorb that 30%? That's right. Even after he's finished with this temporary work program? Right. The short-term disability benefit is a 70% benefit. So your theory is that there's no way he would know that the clock starts at the beginning of the nine-day period versus at the end, and there's nothing in the summary plan description or the plan that would shed clarity on that issue? Right. And this really is the central problem with the summary plan description. This is a frustrating case because it could be so easily solved by rewriting the summary plan description. The fact that the return-to-work program is mandatory imposes an obligation on FedEx to tell employees, look, if you are participating in the return-to-work program, this doesn't toll your deadline or delay any of your claim submission deadlines for the disability plan. Well, that's where counsel's actual notice argument comes in. Do you want to talk about that? Sure. First of all, these letters that were sent to Mr. Magrodichian weren't admitted, and that's a separate issue that we can talk about. But even if they are admitted, these letters to Mr. Magrodichian are merely evidence of their interpretation of the SPD. They can't override what's actually in the summary plan description with the letters. They can't cure any defects that are in the summary plan description with their letters. And that's the central issue in this case, which is is this enough? Well, no, but can they be used to show that he was on notice and therefore he can't really rely upon a summary plan description's ambiguity because he's being told here's what it means. Well, what he's been told is what FedEx thinks it means, but the summary plan description is confusing. He would be entitled to conclude that that wasn't a fair interpretation of it. And also I'd like to add the record I think fairly clearly shows that he thought he was doing the right thing. When he called up Aetna to submit his short-term disability claim, one of Aetna's questions is, well, what was the last day that you worked? Because they want to know how to calculate the benefits. And he told me it was April 15, 2011, which was the last day of his participation in the Return to Work program. So he's someone who clearly thought that the last day of work for purposes of the disability program was the last day that he was in the Return to Work program. So notwithstanding that these letters were sent to him, and I would encourage the court to take a look at the letters. And, of course, this is if the court even finds that they should be admitted into evidence, which we are arguing that they should not. The letters are very long and filled with a lot of information, and that's something that's easy to overlook. And someone who receives this letter right after they go out of work and then comes back into the Return to Work program would reasonably conclude, well, yes, you're telling me that I should be applying for short-term disability benefits, but I don't need to do that anymore because now I'm working. And so the way to dispel that kind of confusion that the reasonable person would have is to explicitly tell people in the summary plan description, look, if you're in the Return to Work program, this does not mean that you don't have to submit your claim. You still have to submit your claim, and here is the deadline. And, moreover, the deadline is tied to the last day that you performed your regular occupation. And that's the central problem with the defendant's argument in this case, is FedEx is trying to tie the disability deadline beginning to the last date of performance of the regular occupation. What do you have to say while you're interrupted there? What do you have to say about the substantive versus procedural claim? Well, I agree with the tenor of the Court's questions, which were suggesting that it is a substantive violation, not a procedural one. I agree with that 100 percent. The question of whether a summary plan description is adequate is clearly a substantive issue of federal law. There are no allegations that they mishandled the claim somehow. What about the allegations of the complaint? Well, I don't think those are relevant. By the time the briefing was done, it was clear what the central issue was, is the SPD adequate? And so there may have been other evidence. There may have been other allegations in the complaint, but that was the central issue at the time of briefing. And, at any rate, these letters clearly should have been included in the record. Let me back up a second. Counsel is trying to depict this new evidence as rebuttal evidence to new arguments that were in the briefing. But this new evidence is letters to Mr. Megrodichian about how he should submit his claim. I mean, those are core documents that ought to be in the administrative record in the first place. So this isn't a rebuttal issue. This is an issue about documents and what should be in the administrative record. These are documents that they should have put in the record, and to put them and try to include them in evidence with their opposition to the trial brief. And let me back up and explain what happened. The parties submitted trial briefs, and then they submitted opposition trial briefs. There were no reply briefs, and there was no hearing. It was decided on the papers. So these documents were submitted with the opposition at the very last possible moment. I mean, this is the last moment in the case in which these documents could have been submitted, and they weren't. I know we had briefly touched on the issue of the admissibility of the extrinsic evidence, and I'm happy to talk about that. But I don't think that's... I don't think we need to, and I don't think that's dispositive. You know, this is a pretty straightforward case where a summary plan description provides confusing information about claim submission. That is the ideal case in which ERISA needs to step in and prevent those provisions from being enforced against participants. And I'd actually like to cite a case to the court that I don't think was submitted that was cited in the briefs. The case was decided in the middle of briefing, and this is the Spindex physical therapy case. The citation is 770F3. Why don't you give it to the clerk after? I will do. At any rate, the whole thing in that case was that a plan's failure to prominently display a time limit rendered it unenforceable. And this case I think is even easier than Spindex, because in Spindex the time limit was fairly straightforward. It's just a matter of whether someone could find it if they were looking for it. In this case, the time limit is there, 60 days, but no one knows how to calculate it. It's calculated based on when your disability begins, but the SPD defines disability as alternately your inability to do a job or your inability to work, and because of the return to work program, it's necessarily confusing. So unless the court has any further questions, I'll rest on that. Okay. Thank you. Okay. Thank you. Rebuttal? I'll give you a minute. Did she have any time left? No. Minute and a half. Okay, that's fine. Your Honor, I want to reiterate how the SPD defines disability. It doesn't just define disability as your inability to work. It states your inability to work due to a mental or physical illness. Again, you're working in a TRW program, so you working in a TRW program is not consistent with you not being able to work due to your mental or physical illness. The only mental or physical illness that's preventing you from work is preventing you from working from your regular job. Also, Your Honors, what the appellee is essentially asking or saying about the SPD, they're saying it's confusing because of a language that it doesn't contain, and I think that is the argument that was made in the cases cited in our brief in the Stahl case and the Spivey case where the court said the SPD is designed to be concise. It's designed to provide general circumstances, and you're not supposed to address every situation to cover every particular participant. To do so would run afoul of the SPD because once you start putting in every circumstance, it's going to make it too long and participants won't read it. So let me clarify for the record that not everyone works in a TRW program, so to add this specific language explicitly addressing this would be a situation explicitly for the appellee. In order to work in a TRW program, there's conditions. First, your health care provider has to release you to do so. Many of the participants, many of the employees are not released by their provider, so they don't even go through this process. And then second, even after your health care provider releases you, we have to have the work that complies with your restrictions, and many of these technical jobs that the employees have, they don't meet that. So to carve out this specific exception just for someone who works in a TRW program is just simply not required by the SPD. And those cases, I think, stand for that proposition. Okay. Thank you, Your Honor. Thank you. Thank you. Actually, the clock was counting up instead of down, but that's okay. We got it. Thank you, counsel. The panel appreciates your arguments, and the matter is submitted at this time.
judges: Murphy, Paez, Nguyen